Rebecca Holland Campbell
1131 Alta Loma Rd.
Apt. 424
West Hollywood, CA 90069
908-963-8119
hollandcampbell@gmail.com
In Pro Per

FILED
2024 JUN 17 PM 2:08
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY ____

PAID
JUN 17 2024
CLERK, U.S. DISTRICT COURT
COURT 4612

ASH

UNITED STATES DISTRICT COURT

CENTRAL DIVISION OF CALIFORNIA

WESTERN DISTRICT

REBECCA HOLLAND CAMPBELL,

Plaintiff,

v.

ITALIA TRASPORTO AEREO S.p.A., trading as ITA AIRWAYS,

Defendant.

Case No. **CV24-5093-SPG(SKx)**

**COMPLAINT FOR:**

(1) **BREACH OF CONTRACT;**
(2) **GROSS NEGLIGENCE**
(3) **NEGLIGENCE**
(4) **UNJUST ENRICHMENT**
(5) **FRAUD IN THE INCEPTION & INTENTIONAL MISREPRESENTATION**
(6) **INTENTIONAL INFLICTION OF EMOTION DISTRESS**
(7) **JUSTIFIABLE RELIANCE**
(8) **PROMISSORY ESTOPPEL**
(9) **PUNITIVE DAMAGES**
(10) **NEGLIGENT HIRING, TRAINING, & RETENTION OF UNFIT EMPLOYEES**

Comes now the Plaintiff Rebecca Holland Campbell, (hereinafter "Plaintiff") and as and for her Complaint against the Defendant Italia Trasporto Aereo S.p.A., trading as ITA Airways (hereinafter "ITA") states as follows:

## PARTIES

1. Plaintiff is an adult individual who at all times relevant to this matter has permanently resided at Apartment 424, 1131 Alta Loma Road in West Hollywood, California, in the County of Los Angeles.

2. Defendant Trasporto Aereo S.p.A., trading as ITA Airways, is the state-owned flag carrier airline of Italy.

3. Upon information and belief, it is owned fully or in part by the Government of Italy via the Ministry of Economy and Finance, and at all relevant times to this matter has conducted business and had offices in the County of Los Angeles, state of California.

## JURISDICTION AND VENUE

4. This Court is a court of general jurisdiction and, therefore, this Court has jurisdiction over this matter, as well as jurisdiction to grant declaratory relief on behalf of Plaintiff, pursuant to the Federal Rules of Civil Procedure.

5. This Court has personal jurisdiction over ITA because it has an office and is engaged in business within the State of California and the County of Los Angeles and in furtherance of Plaintiff's claim there are allegations of fraud in the inception by Defendant.

6. This Court has previously determined that it has jurisdiction over a matter of this type in Gupta v. Thai Airways International Ltd, 487 F. 3rd 759 (2007) United States Court of Appeals 9th Circuit.

7. Venue is proper in this Court because of Plaintiff's permanent residence and ITA's conducting of business and maintenance of offices located in the County of Los Angeles.

8. The Foreign Sovereign Immunities Act (hereinafter "FSIA") is the exclusive source of subject matter jurisdiction over all suits involving foreign states or their instrumentalities.

9. Upon information and belief, ITA is a "foreign state" as defined by 28 U.S.C. § 1603(a)(b), and at all relevant times was and remains engaged in "commercial activity" as defined in 28 U.S.C. § 1603(d)(e).

10. In this matter, ITA can make no claim of immunity in that Plaintiff's suit is excepted from a FSIA sovereign immunity claim on the basis of the application of 28 U.S.C § 1605(a)(2)(3) and (5).

11. Plaintiff further alleges that in addition to the acts specified below that ITA's entire airway's enterprise constitutes "commercial activity" (see Chief justice Roberts opinion in Obb v. Sachs, United States Supreme Court, 577 U.S.__ (2015)

12. FSIA does not extend to suits based on foreign states commercial or private acts. See Sugarman v. Aeromexico, Inc., 626 F. 2nd 270 (1980) United States Court of Appeals 3rd Circuit.

**STATEMENT OF FACTS AND GENERAL ALLEGATIONS**

13. During the early part of July, 2022, Plaintiff was diagnosed with an aggressive form of breast cancer and told by her oncologist to prepare for non-elective, major surgery the first week of August, 2022.

14. This physician's notification to Plaintiff was the most traumatizing event in Plaintiff's life.

15. At that point in time, Plaintiff had already scheduled round trip tickets from Los Angeles, California to Rome, Italy, via ITA, to be accompanied by her boyfriend, Tyler Olson, and his three young children (collectively with Plaintiff, the "Travelers"), with a return flight scheduled back from Rome to Los Angeles on the morning of July 30, 2022. All five round trip tickets were fully paid for in advance of the trip.

16. Plaintiff's oncologist urged her to make the trip but directed her to be sure to return to Los Angeles no later than August 2, 2022, for required pre-surgical procedures.

17. With Plaintiff's oncologist's permission, the Travelers flew from Los Angeles International Airport ("LAX") to Rome Fiumicino Airport ("FCO") on July 10, 2022 on ITA Flight 621.

18. A return flight on ITA 620 was scheduled to fly from FCO to LAX on July 30, 2022, with a departure time scheduled for 9:15 a.m.

19. The Travelers arrived at FCO approximately three hours before their scheduled flight time of 9:15 a.m. for ITA Flight 620 to LAX and entered and stood in the Premier boarding line to the check-in desk well before 6:30 a.m.

20. ITA's website prescribes no mandatory time requirement for passengers to the USA from FCO to be at the check in desk pre-flight.

21. The Travelers were calm and expected no issues checking in and moving through security to their boarding gate, given they had arrived well in advance of their flight and because the Travelers' only luggage for the flight was carry on.

22. Between 7:10 a.m. and 7:20 a.m., an ITA female employee, who appeared from her demeanor and bearing to be acting in a supervisory capacity, and who later confirmed herself to be a supervisor, reached the Travelers' place in the Premier check-in line, and asked to review all of the Travelers' tickets and passports.

23. The Travelers immediately complied and after verifying the Travelers' documents, a conversation took place between the ITA supervisor, Plaintiff, and Tyler Olson.

24. Plaintiff, an experienced air traveler, explained to the ITA supervisor, who was fully fluent in English, that Plaintiff was getting a little nervous about the slow line, that Plaintiff was on Plaintiff's way home for final tests and preparation for serious breast cancer surgery, and that she could not afford to miss this flight.

25. Plaintiff told the ITA supervisor that they were all traveling solely with carry-on luggage and had no check-in baggage.

26. The ITA supervisor stated that she understood they had no luggage to check.

27. The ITA supervisor physically checked the Travelers' flight take off time and verbally acknowledged her understanding of Plaintiff's medical condition, specifically wishing Plaintiff a good flight home and a safe recovery from her surgery.

28. The ITA supervisor clearly articulated and assured Plaintiff that she and her companions would make their flight.

29. The ITA supervisor stated affirmatively that she would PERSONALLY keep an eye on the Travelers and if they had not already moved through security and on towards their departure gate as their time of scheduled boarding approached, she would PERSONALLY come and expedite the Travelers passage to the gate.

30. The ITA supervisor then affixed a sticker bearing handwritten initials to all five of the Travelers' passports (see Exhibit `1, attached, and incorporated herein) and stated, "Don't be nervous. I will take care of you."

31. The ITA supervisor then moved on down the line and engaged other people who were waiting in line.

32. Based on her personal representations as an ITA supervisor, the Travelers relaxed in line and justifiably and reasonably expected that they would have no issues making their flight scheduled to depart at 9:15 a.m.

33. Between 8:20 a.m. and 8:30 a.m., Plaintiff heard a male ITA employee standing near the check-in desk call out for boarders for a 9:40 a.m. flight to New York City.

34. The 9:40 a.m. flight was scheduled for departure 25 minutes *after* Travelers' scheduled flight.

35. The Travelers were in line directly in front of a gentleman who was on the 9:40 a.m. flight to New York.

36. That gentleman also heard the announcement for the 9:40 flight made by the male ITA employee and he immediately proceeded to the front of the line to be checked in and taken to his flight.

37. At all times, the Travelers were attentive, alert, and in a physical position to hear all flight calls and their flight had not been called.

38. ITA's website states that passengers are allowed to board their flight up to 15 minutes before takeoff is scheduled.

39. The Travelers' reaction, not having been pulled out of line by the supervisor for their flight as promised, was to become extremely concerned and ask the male ITA employee why they had not been called for their flight.

40. The ITA employee did not answer their direct question and, instead, responded brusquely and impolitely that they had missed their boarding and they could not fly on Flight 620.

41. At the time of conversation with the male ITA employee, Plaintiff and her companions still had between 30 and 40 minutes to get to the departure gate according to ITA's own boarding rules.

42. The supervisor who had assured the Travelers that she would look out for them was nowhere to be seen and had never returned.

43. Despite the fact that the Travelers were told that Flight 620 was "delayed" and they still had more than sufficient time to get to the departure gate on regular time, and they told the male ITA agent that they had no luggage to check and they could run to the flight, the male ITA agent stated, "No, it is too late. Go upstairs and try to get on a different flight."

44. But for the supervisory employee's statement that she would personally make sure that the Plaintiff and her companions would make their flight, which statement the Plaintiff and her companions justifiably and reasonably relied upon, Plaintiff would have left the line by 8 a.m. and attempted to locate an ITA employee to facilitate passage to the gate.

45. Still holding out some hope a different agent might actually listen to them and help them make their scheduled flight, the Travelers went swiftly and directly upstairs where a different ITA employee working behind a glass listened to the Travelers' situation and then advised them that they could not board Flight 620 and that there was no room on any other ITA flights to the U.S. that day.

46. The employee did not offer to assist them in any way to get on another airline and suggested they start calling other airlines to look for alternative flights to LA from Rome.

47. The Travelers went back downstairs to try and find a place to sit and start making phone calls and attempt to find flights out of Rome to Los Angeles.

48. When they reached the bottom of the stairs, quite to their surprise, there was the same female ITA supervisor with whom the Travelers had dealt with previously and who had affixed initialed stickers to each of their passports and personally guaranteed that she would facilitate the Travelers getting to the gate if necessary.

49. Although she had dealt with the Travelers only about an hour prior, the ITA supervisor fraudulently, with gross negligence and with malicious intent, verbally and vehemently denied that she had ever seen Plaintiff or spoken with her previously.

50. Her fraudulent denial was a false statement because she had affixed initialed stickers to each of the Travelers' passports and assured them she would personally make sure that they made their flight (see Exhibit 1).

51. The ITA supervisor stated, without apology or explanation, that the Travelers had missed their flight, even though factually Flight 620 was delayed and there was still time to board.

52. Upon information and belief, Plaintiff alleges that ITA has been engaged in, and continues to engage in, a deliberate and intentional pattern and practice of misleading passengers such that they miss their scheduled flights, thus unjustly enriching ITA to the passengers' financial detriment.

53. Upon information and belief, Plaintiff alleges that ITA has been engaged in, and continues to engage in, a grossly negligent or negligent pattern and practice of misleading passengers such that they miss their scheduled flights, thus unjustly enriching ITA to the passengers' financial detriment.

54. Upon information and belief, Plaintiff alleges that ITA has been engaged in, and continues to engage in, a grossly negligent or deliberate and fraudulent pattern and practice of

denying travelers' formal complaints in a summary fashion without due consideration of the facts articulated in the complaint.

55. This practice has resulted and continues to result in ITA's effectively having the capacity to double – or perhaps more than double – fares collected for a single seat in a flight.

56. Under great traumatic emotional stress and duress and at an outrageous cost, Plaintiff was able to secure alternative transportation home for the entire group.

57. Plaintiff and her group were wrongfully, negligently, and intentionally denied boarding on ITA Flight 620 and were forced to obtain alternate transportation without any assistance from ITA, to wit, five same day-coach tickets, via American Airlines Flight 111, Rome to Chicago connecting to LAX via United Airlines Flight 2648 at a cost to Plaintiff of $15,532.85.

58. In later contact between ITA and Plaintiff's American Express credit card company, through which Plaintiff had purchased round-trip tickets for the trip, ITA stated in writing that Plaintiff and her group were denied boarding because "The Customer was required to show their ID at the time of boarding".

59. In point of fact,, these five Travelers and upon information and belief, others awaiting ITA flights, were denied by ITA the opportunity to show their IDs "at the time of boarding" as a direct result of the wrongful, intentional, fraudulent, negligent, and grossly negligent actions of ITA supervisory employees and others, acting in their employment capacity on behalf of ITA.

60. Plaintiff further alleges that the actions of the supervisory employee of ITA were in keeping with the wrongful pattern and practice of procedures taught to the supervisory employee.

61. Moreover, no ITA employee ever called the Travelers' flight to ensure any passengers waiting in line for that flight could proceed to check-in.

62. Given that a male ITA employee called for the 9:40 a.m. flight to New York, his failure to call for passengers for Flight 620 was either through negligence or by corporate design, the result of which was a further cause of the Travelers' inability to proceed to their gate.

63. The Travelers had all of their IDs previously verified by the ITA supervisor at her request.

64. Plaintiff's actual monetary cost to reimburse her for the alternate transportation is $15,532.85.

65. Plaintiff wrote to ITA on two occasions and attempted to resolve this matter amicably with ITA but was summarily rejected without any explanation as to ITA's employees' misrepresentations, actions and inactions, and their effect on Plaintiff and her fellow Travelers ability to make their flight.

66. The emotional distress imposed upon Plaintiff by ITA's actions considering Plaintiff's medical condition at the time was overwhelming and continued for some time thereafter.

67. ITA breached its contract with Plaintiff and conducted itself through its supervisory employee's misrepresentations in a fraudulent and grossly negligent manner.

68. Plaintiff justifiably and reasonably relied on the false misrepresentations of the ITA supervisory employee.

69. Plaintiff's reliance was both reasonable and justified under the circumstances, and the misrepresentations were clearly material, Plaintiff's damages being a direct result of the misrepresentations and gross negligence of ITA.

70. ITA, through its supervisory representative, made a significant representation to Plaintiff that was reasonably and justifiably relied upon, and the ITA supervisor's failure to perform upon the representation caused Plaintiff significant direct monetary damage and emotional distress.

71.  Plaintiff alleges that upon information and belief, ITA has unjustly enriched itself as to other travelers as well, by keeping all of its flight payments for the flight the Travelers were denied and on numerous occasions rebooking stand by passengers in the same seats.

72.  These actions by ITA constitute fraud and/or gross negligence.

73.  Plaintiff upon information and belief, alleges that the actions of the ITA supervisory employee constitutes a pattern and practice, to wit, an in house tactic of ITA to unjustly enrich itself, including double collecting for seating no longer occupied.

## FIRST CAUSE OF ACTION

### Breach of Contract

74.  Plaintiff realleges and incorporates Paragraphs 1 through 73, as if set forth herein.

75.  Plaintiff alleges that ITA fraudulently, and with malicious intent, contracted with Plaintiff, while knowingly engaging in general practices intended to unjustly enrich ITA while intentionally denying boarding to ticketed travelers.

76.  At all times relevant to this litigation, ITA was in a contractual relationship with Plaintiff and ITA owed a duty to Plaintiff to act in good faith and deal fairly with her.

77.  Plaintiff performed all duties and obligations required under the contract between Plaintiff and ITA.

78.  ITA breached its duty owed under the contract on more than one occasion as stated above.

79.  Such acts and omissions leading to ITA's breach of its duty to deal in good faith and fairly with Plaintiff were the direct, actual and proximate cause of harm to Plaintiff.

80.  ITA's conduct was outrageous, with its acts being done with malice or bad motives or reckless indifference to the interests of Plaintiff.

81.  ITA committed a significantly legal act in the United States by its failure to abide by the terms of its contract and deliver the Travelers to LAX as agreed, the breach of contract occurring in the United States.

82. "The most legally significant act—the breach of contract—occurred in the United States when defendant... failed to make good on its financial obligation", i.e., the delivery of the Travelers to LAX.

83. Los Angeles was "the place of performance for" ITA's "ultimate contractual obligation" which "necessarily has a direct effect in the United States" (See opinion of Justice Scalia in Republic of Argentina v. Weltover, US Supreme Court 1992, 112 S. Ct. 2160).

84. ITA's failure to deliver the Travelers to LAX was the legally significant act that occurred in a "place designated for performance of a contract".

84. Plaintiff has been directly damaged by ITA's breach of contract.

## SECOND CAUSE OF ACTION

### Gross Negligence

85. Plaintiff realleges and incorporates Paragraphs 1 through 84, as if set forth herein.

86. ITA owed Plaintiff a duty to act reasonably.

87. ITA owed Plaintiff a duty of due care in carrying out its duties.

88. ITA's conduct demonstrated a willful disregard for precautions and practices to ensure Plaintiffs' contractual rights were protected and fulfilled.

89. ITA's conduct as described above demonstrated a willful disregard for the rights of Plaintiff.

90. ITA breached duties owed to Plaintiff and was grossly negligent when it conducted itself through the actions described above, said acts having been committed with reckless disregard for Plaintiff's health, safety and contractual rights.

91. As a direct result of the gross negligence of ITA, Plaintiff sustained severe emotional distress and physical pain, emotional anguish, fear, anxiety, humiliation, embarrassment and other physical and emotional injuries, damages, both economic and noneconomic, in the past, present and future, for which this claim is made. The injuries suffered by Plaintiff are substantial.

92. ITA's committing of foreign torts in Rome, Italy, constitute sufficient contacts with the United States to establish the requisite "direct effect in the United States.

93. ITA's conduct as described herein was despicable and was committed maliciously, fraudulently and/or oppressively with the wrongful intention of injuring Plaintiff and with a willful and conscious disregard of the rights of Plaintiff, justifying an award of punitive damages.

## THIRD CAUSE OF ACTION

### Negligence

94. Plaintiff realleges and incorporates Paragraphs 1 through 93, as if set forth herein.

95. ITA owed a duty to provide reasonable care to Plaintiff.

96. ITA breached its duties of care to Plaintiff.

97. As a direct, proximate, immediate and foreseeable result of ITA's negligent conduct, Plaintiff has suffered permanent economic and non-economic damages.

## FOURTH CAUSE OF ACTION

### Unjust Enrichment

98. Plaintiff realleges and incorporates Paragraphs 1 through 97, as if set forth herein.

99. By virtue of the acts and omissions described above, ITA received benefits, including additional travelers and increased revenue at the expense of Plaintiff.

100. ITA has unjustly retained these benefits at the expense of Plaintiff and should be required to make full restitution plus the cost of alternative transportation to Plaintiff.

## FIFTH CAUSE OF ACTION

### Fraud in the Inception of Contract & Fraudulent Misrepresentation

101. Plaintiff realleges and incorporates Paragraphs 1 through 100, as if set forth herein.

102. ITA intentionally misrepresented to Plaintiff as stated above.

103. ITA intentionally and actively misrepresented to Plaintiff as stated above such that Plaintiff and her group were wrongfully denied access to Flight 620 and Plaintiff suffered economic damage.

104. ITA's misrepresentations were made fraudulently, knowingly and intentionally.

105. Plaintiff reasonably and justifiably relied on ITA's representations.

106. The reliance by Plaintiff on ITA's representations was reasonable and justified.

107. ITA's fraudulent misrepresentations directly and proximately caused monetary and non-economic damage to Plaintiff.

## SIXTH CAUSE OF ACTION

### Intentional Infliction of Emotion Distress

108. Plaintiff realleges and incorporates Paragraphs 1 through 107, as if set forth herein.

109. As a result of ITA's actions, Plaintiff sustained severe emotional distress for which this claim is made. The injuries suffered by Plaintiff are substantial.

110. ITA is liable and vicariously liable for the conduct of its employees.

111. The emotional distress that has been sustained by Plaintiff was the direct, natural and proximate result of the ongoing wrongful, unlawful and outrageous conduct on the part of ITA as alleged herein.

112. ITA's conduct as described herein was despicable and was committed maliciously, fraudulently and/or oppressively with the wrongful intention of injuring Plaintiff and with a willful and conscious disregard of the rights of Plaintiff, justifying an award of punitive damages.

## SEVENTH CAUSE OF ACTION

### Justifiable Reliance

113. Plaintiff realleges and incorporates Paragraphs 1 through 112 as if set forth herein.

114. Plaintiff relied not only on ITA's supervisory representative's personal assurances on behalf of ITA, regarding getting to the gate in a timely manner, but also that the representations were such that Plaintiff could reasonably and justifiably rely upon them.

115. Plaintiff has suffered damages as a direct result of ITA's supervisory employee's false statements and the false statements of other ITA employees.

116. Plaintiff was reasonably justified in relying on the ITA supervisory employee's stated authority and the representations she made in that capacity.

## EIGHTH
## CAUSE OF ACTION
### Promissory Estoppel

117. Plaintiff realleges and incorporates Paragraphs 1 through 116, as if set forth herein.

118. On or about July 30, 2022, an ITA supervisory employee intentionally and falsely represented and assured Plaintiff that the Travelers would make Flight 620.

119. ITA knew that these representations were false when ITA made them, or else made the representations negligently and recklessly without regard for the truth. ITA did not perform as promised to the detriment of Plaintiff.

120. ITA intended that Plaintiff would rely on the aforementioned representations.

121. Plaintiff reasonably and justifiably relied on ITA's promises and representations.

122. Contrary to the representations made by ITA, ITA did not perform as promised.

123. Plaintiff's reliance on ITA's representations was the direct and sole factor in causing Plaintiff harm. Plaintiff has suffered injury and damages as a result thereof.

## NINTH CAUSE OF ACTION
### Punitive Damages

124. Plaintiff realleges and incorporates Paragraphs 1 through 123, as if set forth herein.

125. ITA breached its duty of due care on more than one occasion and such breaches constitute outrageous conduct and reckless disregard of the rights of Plaintiff.

126. ITA's outrageous conduct towards Plaintiff was done with malice and/or bad motives or reckless indifference to Plaintiff's interests.

127. ITA is liable for punitive damages to Plaintiff.

## TENTH CAUSE OF ACTION
### Negligent Hiring, Training, & Retention of Unfit Employees

128. Plaintiff realleges and incorporates Paragraphs 1 through 127, as if set forth herein.

129. ITA did not exercise reasonable care in hiring the supervisory employee(s) at issue in this matter.

130. The ITA employee(s) were incompetent for the jobs they were allegedly performing.

131. The ITA employees' incompetence would have been apparent to ITA had it exercised reasonable care.

132. Plaintiff suffered the stated damages as a direct result of the improper training of the ITA employees in question.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against ITA for compensatory damages in the amount of $175,000 and punitive damages in the amount of $175,000 as follows:

1. For general and special damages in an amount of $175,000;

2. For an award of exemplary or punitive damages in the amount of $175,000 according to proof;

3. For prejudgment and post-judgment interest on all damages awarded;

4. For costs of suit incurred;

5. For Plaintiff's attorneys' fees and costs subject to Plaintiff's employment of counsel

6. For such other and further relief as the Court deems just and proper.

7. For a trial by jury on all matters subject to jury trial, should the Court determine that the Defendant ITA does not qualify as a "foreign state" under the FSIA Act.

Dated: June 7, 2024

By _____
Rebecca Holland Campbell







